## Gilbert Marriage License

*Ambrose N. Campana,* for petitioner.

WILLIAMS, P. J., October 13, 1955.—Under date of September 20, 1955, Nancy Gilbert petitioned this court to have a guardian appointed for her in order that the guardian consent to her proposed marriage to Charles Richard Thompson.

A citation was issued, directed to Merrill Gilbert and Dorothy C. Gilbert, the parents of Nancy Gilbert, to show cause why such a guardian should not be appointed.

Testimony taken at the hearing on the citation discloses that Nancy Gilbert is but 17 years of age, being born July 20, 1938. Until several months ago she was living with her mother, Dorothy C. Gilbert, in Montoursville. The whereabouts of her father, Merrill Gilbert, are unknown.

It appears that Nancy Gilbert is pregnant with child and that Charles Richard Thompson is the father of her expectant child. At the hearing, Dorothy C. Gilbert appeared and objected to this marriage. She testified that she is the mother of a number of children and that her daughter, Nancy Gilbert, was encouraged to leave her home several months ago and this daughter is now living at the home of Charles Richard Thompson without her consent.

The Act of August 24, 1953, P. L. 1344, sec. 6, provides as follows:

"No license to marry shall be issued by any clerk of the orphans' court:

"(c) If either of the applicants is under the age of twenty-one years, unless the consent of a parent or guardian . . . shall be personally given before the clerk".

The petitioner claims that the court should appoint a guardian to consent to her marriage even though her mother with whom she lived until recently objects to the marriage. In so claiming, she takes the position

that the court should determine as to whether or not her mother is justified in withholding her consent.

She accuses her mother of suggesting an abortion. If this is so, would the court be justified in appointing a guardian to consent to the marriage? She gives as a basis for the guardian the fact that she is pregnant. If a minor is pregnant and the parents object to marriage, is such proper justification for overriding the parents' wishes?

We are of the opinion that the Act of August 24, 1953, supra, was written with the intention that consents of parents are necessary in the marriage of minors. We are of the opinion it was intended that guardians should be appointed only when parents are deceased or have deserted their children.

We, therefore, conclude that according to the laws of Pennsylvania it is necessary for a minor to have the consent of his or her parent in order to marry. Even though some courts have sometimes ruled otherwise, it is our opinion that it is not for us to inject ourselves between parent and child to force a consent to a marriage which, at its best, seems to be brought to a head because of an illicit relationship. If the petitioner is in a position where her mother insists on an illegal operation, then she or her attorney should ask help from the juvenile court.

And now, October 13, 1955, the prayer of the petition is refused.

### Opinion sur Exceptions

In a previous opinion one of the judges of this court refused to appoint a guardian to consent to the marriage of Nancy Gilbert, 17, with Charles Richard Thompson. Testimony was taken which showed that Nancy Gilbert was pregnant, and that Charles Richard Thompson was the cause of her pregnancy. At the hearing, Dorothy C. Gilbert, mother of Nancy, ap-

peared and objected to the marriage. It was testified that the daughter, Nancy, was encouraged to leave home and is now living at the home of Charles Richard Thompson.

An appeal was taken to the court.

We are of the opinion that the petition for the appointment of a guardian to consent to the marriage was properly refused. The Act of August 24, 1953, P. L. 1344, sec. 6, provides that no license to marry shall be issued if either of the applicants is under the age of 21, unless the "consent of a parent or guardian shall be personally given".

It is argued that several common pleas courts have taken a liberal interpretation of the act when the legitimacy of issue is in question. The public policy of Pennsylvania has been to require adult consent before the marriage of a minor. The consent required to be obtained before the marriage of a minor can be solemnized, must be given from a consideration of the advantage to the minor, untainted by selfish motives on the part of the consenting parents: Braum, to use, v. Potter Title and Trust Company, 301 Pa. 365. The mother in the instant case says she objects to the marriage because she does not think it to the best interests of her daughter. The daughter has shown a disregard of parental authority, and the background of her prospective husband may account for part of this objection.

It is argued that the "mother's conduct in this case is . . . unholy vindictiveness" in that she should subject her daughter to the "disgrace and humiliation of a lifetime." It has been said that children born within lawful wedlock are bastards, if the fruit not of the marriage but of adulterous intercourse: Dulsky v. Susquehanna Collieries Co., 116 Pa. Superior Ct. 520. Any child born to the petitioner now will be the

fruit of illegal intercourse. The shame has already attached. Some consider marriages of a certain kind a greater shame than no marriage at all. At least for the purpose of the licensing law we are of the opinion that in this case we should not interpose our thoughts against those of the mother and natural guardian.

*Order*

And now, December 22, 1955, the prayer of the petition is refused.